# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
LINDSEY SLOANE ACREE,                    :    Index No:
                                         :
                Plaintiff,               :
                                         :
v.                                       :    SECONDED AMENDED
                                         :    COMPLAINT
TAL ALEXANDER;                           :
OREN ALEXANDER;                          :
HANA BOULOS aka HANA BALOUT;             :    Jury Trial Demanded
and JOHN DOE,                            :
                                         :
                Defendants.              :
                                         :
-----------------------------------------------------------X
```

Plaintiff Lindsey Sloane Acree, through her attorney, Lili M. Timmermann PA, hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      Tal Alexander and his twin brothers Alon and Oren Alexander have been involved in a scheme to traffic women, by luring them with false promises to be drugged and raped for the financial benefit of their business.

2.      The Alexander brothers would sometimes record themselves doing so without permission and for distribution and would often "pass" the women to business associates to also sexually assault them.

3.      The scheme lasted for over a decade, commencing at the latest in 2011 and ending around the time that their crimes were made public in 2024. The Alexander brothers frequently relied on third parties to lure their intended victims from New York City to other locations in New York and in other parts of the country with the promise of luxury travel and accommodation to be raped by the Alexander brothers and their associates, including business associates.

4. The scheme proceeded as follows: one of the three brothers would identify a victim to target, often in New York City, sometimes with the assistance of a "procurer."

5. He would then lure the targeted victim—using the promise of a party–to one of the Alexander brother's apartments in New York City or to another location where he was staying, if he was not in New York City. Frequently, when the targeted victim arrived at the location for the party there was no party taking place.

6. At other times, the brother would lure the targeted victim already at a party to a different room in the same location under a false pretense.

7. The brothers frequently provided the intended victims with narcotic and other drugs.

8. The brother would then rape the targeted victim by force, coercion, and/or by drugging her first.

9. On occasion he would record the assault and, on information and belief, later distribute the recording.

10. The brothers would later use the recordings and the threat of its publication to ensure their victims' silence.

11. If his brothers were present at the location where he raped the targeted victim, the brother would pass the victim to his brothers to also rape her. If the brothers were not present, he would tell his brothers to target the victim for future sexual assault. In this way, the brothers took turns raping the same woman—either on the same occasion or on separate occasions.

12. The brothers repeated this scheme, with premeditation, over years and possibly decades.

13.     Specifically in the case of Lindsey, Oren Alexander lured her from a nightclub to his apartment in New York City by inviting her to a late-night afterparty taking place there.

14.     When Lindsey arrived, there was no party and she was suddenly alone with Oren.

15.     Oren falsely imprisoned Lindsey by coercion and force and then by coercion and force vaginally raped her.

16.     Weeks later, working through a woman known to Lindsey as "Hana Boulos,"[1] Oren and Tal Alexander arranged to traffic Lindsey--under the guise of inviting her for a weekend at a luxury vacation home with undisclosed "friends" of Hana Boulos— from New York City to the Hamptons.

17.     Once Lindsey arrived at the Hamptons, Oren's brother Tal Alexander and Tal's associate, John Doe,[2] drugged Lindsey and then brutalized and raped her, while recording the assault.

18.     During the weekend, Tal Alexander and John Doe kept Lindsey imprisoned against her will through the use of disabling drugs given to her without her consent.

19.     Oren Alexander thereafter tormented Lindsey with the knowledge that he had raped her. With the threat of the humiliating and degrading video(s) being distributed or publicized

---

[1] Lindsey subsequently learned that "Hannah Boulos" is an alias and that it may have been a fraudulent identity. Through investigators, Lindsey has learned that this woman now goes by the name Hana Boulos and is still living in New Jersey/ New York area. Her birth name appears to be Hana Balout. The caption has been changed to reflect this new information. At one time the defendant went by her married name Hana Janelle Gerazounis

[2] John Doe's name was not known to Lindsey but she identified him in photos and disclosed his participation in her rape to law enforcement. On information and belief, law enforcement have been able to identify him. Lindsey has been able to identify and serve a man that appears to be the man Lindsey identified in the photograph. Once his identity is confirmed, the Complaint will be amended to reflect that name.

looking over her—and the profound and ongoing emotional distress inflicted on her—Lindsey's silence was ensured for years.

20. Accordingly, Lindsey brings this action against Tal and Oren Alexander, and against John Doe and Hannah Boulos as co-conspirators and facilitators, for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, et seq. ("VGMVPL"), including and separately for, Sexual Battery, False Imprisonment, Sex Trafficking, Conspiracy to Commit Sex Trafficking; Intentional Infliction of Emotional Distress; and Unlawful Dissemination of a Non-Consensually Obtained Intimate Image.

## JURISDICTION AND VENUE

21. The Court has personal jurisdiction, inter alia, because Plaintiff and Defendants Tal and Oren Alexander resided in New York at various times; and on information and belief, Hana Boulos resided in New York at the time of the trafficking and assault and continues to spend significant time in New York, including likely living in Manhattan. The amount sought in damages exceeds $50,000.

22. Venue is proper in this county because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## PARTIES

23. Plaintiff Lindsey resides in Brooklyn, New York.

24. Defendant Tal Alexander resided in Manhattan and Miami until his arrest and now resides in Brooklyn, New York.

25. Defendant Oren Alexander resided in Miami, Florida until his arrest and now resides in Brooklyn, New York.

26.    Defendant Hana Boulos's current residence is unknown but her last confirmed address was in Somerset, New Jersey.

27.    Defendant John Doe's name has not been confirmed but the person who has been matched to the photo Lindsey identified as her assailant has an address in Miami, Florida.

## FACTUAL ALLEGATIONS

### I.    Oren Rapes Lindsey

28.    Plaintiff, Lindsey, met Defendant Oren Alexander at a party at a popular New York City night club in 2011. They spoke at the club that night but, although they had mutual acquaintances, they did not subsequently spend time together.

29.    Oren added Lindsey on Facebook in April 2011.

30.    Later in the spring, Lindsey ran into Oren again at another popular night club.

31.    Oren then invited Lindsey to an afterparty at his apartment, which he informed her he shared with a roommate.

32.    When they arrived at Oren's apartment, Lindsey discovered that there was no party and no one else at the apartment. This was a common tactic of the Alexander brother's scheme— to lure women to their home under the pretext of a larger gathering.

33.    Upon seeing that she was alone with Oren, Lindsey politely made excuses to leave. Oren, in response, pressured and cajoled her to stay.

34.    When Lindsey insisted on leaving, Oren coerced her, including by taking her shoes and throwing them into a closet in his bedroom and also taking her cell phone and putting it in his nightstand.

35.    Lindsey repeatedly asked Oren to return her personal items.  Realizing it was 4AM in the Chinatown/ Soho area and afraid to walk home—she could not get an Uber or even a cab

without the personal items Oren was holding hostage—Lindsey continued to plead with him that she wanted to go home and to give her back her shoes, jacket, and phone.

36.     Oren refused to return the items.

37.     Oren then pushed Lindsey onto the bed, removing her dress, and proceeded to vaginally rape her while wearing a condom.

38.     After coercing Lindsey to have sex with him and forcing her onto the bed and raping her, Oren then returned Lindsey's coat and shoes but kept her cell phone.

39.     After Oren removed himself from on top of her, freeing her to leave, Lindsey took her shoes and ran into the street at night and fled home on foot without her phone.

## II.     The Alexander Brothers Traffic Lindsey to Suffolk County

40.     As part of their scheme, after raping Lindsey, Tal and/ or Oren Alexander and their associates, set up for Lindsey to be lured and transported from New York City to the Hamptons in Suffolk County.

41.     In the summer of 2011, unbeknownst to Lindsey, the Alexander brothers conspired with a woman—who Lindsey believed, at the time, was her friend and known to her as Hana Boulos—to invite Lindsey for a luxury weekend in the Hamptons to stay at a guesthouse, which according to Hana had been rented by Hana's friends who were unknown to Lindsey.

42.     Weeks after Oren Alexander raped Lindsey, Lindsey and the woman calling herself Hana Boulos took the train from New York City to a station in Long Island with which Lindsey was unfamiliar.

43.     On the train, Hana Boulos painted Lindsey's nails to get ready for what Lindsey believed to be a vacation weekend in the Hamptons.

44.     When Lindsey and Hana Boulos arrived at the train station in the Hamptons, two men Lindsey had never met before were waiting for them in an SUV they were driving.

45.     One of the two men introduced himself to Lindsey as Tal Alexander.[3]

46.     Upon hearing Tal's surname, Lindsey recoiled and asked if he was at all related to Oren Alexander. Tal Alexander responded that he had never heard of an Oren, continuing the deception and furthering the illegal scheme.

47.     Tal's male acquaintance also introduced himself. Lindsey could not remember the second man's name but remembered he claimed to be from Miami and has identified him in photos. He is identified herein as John Doe.

48.     On information and belief, the woman known to Lindsey as Hana Boulos acted as a "procurer" or "recruiter" for the Alexander Brothers, luring women to locations where the brothers would then rape them.

III.     **Tal Alexander and John Doe Repeatedly Rape Lindsey**

49.     Upon arrival to the vacation house where Lindsey expected to be a guest for the weekend, other guests were present.

50.     Lindsey went to a room to change into a swimsuit to join them in the hot tub.

51.     When she came downstairs to the hot tub, Tal and John Doe offered her a glass of white wine they had poured and that, unbeknownst to her, on information and belief, contained illegal and/or legal drugs intended to incapacitate her or render her pliant.

---

[3] Unbeknownst to Lindsey, Tal Alexander was present at a party Lindsey attended in New York City, which she only learned when she saw he was visible in the background of a photo posted on Facebook on July 3 but taken previously.

52.     Lindsey took two sips of the drink and from that point forward has only intermittent memory of what happened next.

53.     Tal and John Doe took turns brutalizing and raping Lindsey in various locations of the vacation home, including on the floor of what appeared to be a gym and in the sauna. Through the drug-induced haze, it seemed at times they raped her simultaneously.

54.     As a result of being drugged by Tal and John Doe, Lindsey was unable to fight back or cry for help as they assaulted her.

55.     Lindsey remembers Tal grabbing behind her head and forcing her head down onto the bench of the sauna before John Doe walked in.

56.     Lindsey remembers Tal watching as John Doe sexually assaulted her.

57.     Lindsey remembers Tal and John Doe checking to confirm she was "out."

58.     At times Lindsey remembers trying to escape, crawling on the floor, but she could barely make her body respond, and Tal and John Doe easily overpowered her.

59.     At one point, John Doe batted Lindsey around like a cat playing with a toy as her body was essentially limp.

60.     At another moment Tal left and returned with a tripod. Lindsey remembers the sound of their laughter and the feel of their hands as they held her down.

61.     Lindsey awareness and memory were severely impaired, and she would come in and out of awareness, forming some crystal clear memories of what was done to her while having no memory at all of other moments.

62.     At times Tal and John Doe appeared to be recording the crimes on a video camera.

63.     Lindsey has a memory of Hana Boulos dressing her and putting earrings on her.

64.      On information and belief, Hana Boulos took pictures of her as well.

65. When the effects of the drugs wore off, perhaps days later, and Lindsey finally regained control and awareness, she was sitting on a lawn chair of the vacation home wearing a towel and parts of her bikini.

66. Confused and stunned, knowing she had been raped, she tried to piece together how Tal and John Doe had been able to do that to her.

67. Tal and John Doe told Lindsey that she was "embarrassing," pointing to her chipped nail polish. John Doe held Lindsey's hair extensions in his hands that he had ripped out of her hair, waved them at her, and told her she should probably "fix that.

68. Tal and John Doe instructed her to get her personal items and leave the house.

69. The woman known as Hana Boulos at that point returned to the house having been away without Lindsey's knowledge.

70. Hana Boulos encouraged Lindsey, who was humiliated and scared, to leave.

71. As she left, Lindsey saw two high school-aged girls wearing backpacks. They told her that they were from the local high school and at the house as guests.

72. Afraid for them, knowing that they would be victimized as well, but too stunned to say anything, Lindsey left the house without warning the girls of what had happened to her.

## IV.  **Lindsey Suffers Extreme Emotional Distress**

73. Lindsey and Hana Boulus got a ride back to the Jitney stop, then to New York City with an acquaintance Lindsey ran into while waiting for the Jitney.

74. Upon returning to New York City, Lindsey told her friends what had happened to the extent she could make sense of it at the time.

75. Lindsey was suffering from severe trauma as a result of the rapes and suffered ongoing physiological and psychological effects from the drugging.

76. Later, while walking with her mother in New York City, Lindsey ran into Oren Alexander. Lindsey was stunned to see him and froze.

77. Oren turned to Lindsey's mother and said "like mother, like daughter.," and continued walking.

78. Lindsey's mother, not knowing what Oren was talking about, thought he was complimenting her.

79. When her mother mentioned the "compliment" to Lindsey, Lindsey broke down crying and told her everything that Oren and Tal Alexander, along with John Doe, had done to her.

80. Lindsey learned that Tal and Oren Alexander were in fact related and that Tal had been intentionally deceiving her.

81. Humiliated, in shock, and paralyzed with shame, Lindsey attempted to actively suppress the memory of what had happened to her.

82. Realizing that the woman she knew as Hana Boulos and who she had believed to be a friend had in fact deceived her and set her up to be raped, Lindsey cut off all further contact with her.

83. Lindsey believes that the Alexander defendants paid Hana Boulos and provided things of value to her to bring Lindsey and other women to be raped at parties they attended.

84. Lindsey spent time in the same social circles as the Alexander brothers and was constantly afraid that they would tell people who she knew what they had done to her or publicize the video of themselves sexually assaulting her.

85. In fact, an acquaintance of Lindsey's informed her that the Alexander brothers were telling everyone that two of the brothers had sex with Lindsey and that they had deceived her about being brothers.

86.     Later that year, Lindsey ran into Oren and Alon Alexander while skiing in Aspen at the mountaintop chalet and immediately left the chalet in a panic and raced down the mountain.

87.     Lindsey was terrified that they would attempt to bring up the rape again in order to humiliate her.

88.     In 2014, Lindsey and her husband attended a party in the Hamptons with friends and ran into Tal. Lindsey immediately locked herself in the bathroom to hide and begged her husband to leave the party.

89.     Lindsey was experienced absolute panic and was terrified that Tal Alexander would again attempt to humiliate her.

90.     Years later, Lindsey was once again skiing and had a flashback to seeing the Alexander twins at the ski chalet in Aspen. She had a panic attack at the top of the mountain, uncontrollably sobbing to her ski instructor, and then had a complete breakdown hours later.

91.     Lindsey has suffered irreparable psychological and emotional damage as a result of being raped by Tal Alexander, Oren Alexander, and John Doe, and being trafficked by Tal Alexander, Oren Alexander, Hana Boulos.

92.     Lindsey continues to suffer from trauma as a result of what the Defendants did to her.

93.     To this day, Lindsey remains terrified that Oren, Tal or John Doe will make broadly public the video(s) she believes they made of themselves assaulting her.

94.     Lindsey believes that the Alexander defendants have shown and provided the recording(s) of themselves raping her to business associates and other acquaintances in furtherance of their scheme and for their own financial benefit.

**V.     The Alexander Brothers Continue to Conspire to Traffic and Rape Women**

95.     On information and belief, Tal and Oren Alexander, as well as their brother Alon, continued to target women to be raped through the time that their crimes were publicly disclosed in 2024.

96.     Lindsey has subsequently learned of at least three women who were paid prostitutes who the Alexander brothers brought to the Hamptons to provide to their friends for paid sex acts and arranged for business associates to engage in commercial sex acts with the women.

97.     As part of their scheme for multiple brothers to rape the same women, the brothers frequently arranged for women to be trafficked from New York City to the Hamptons and other locations in New York and other states.

98.     The Alexander brothers would use deception and the false pretense of luxury accommodation or exclusive events, sometimes through co-conspirators and other third parties, to "procure" women to be raped.

99.     The Alexander brothers also shared their targeted victims with business associates and men in their network to build their brand as powerful men who were above the rules. They did this for financial gain.

100.    On information and belief, the Alexander brothers received payment or other things of value from their business associates for the opportunity to rape women the Alexander brothers had procured for them.

101.    On information and belief, the Alexander brothers relied on co-conspirators to help cover up the sexual assaults, including by lying to targeted victims about what had happened, attempting to shame the victims into not reporting the crimes, threatening victims, threatening to disclose the recordings of the victims' rape, and otherwise covering up the Alexander brothers' involvement in drugging and raping the targeted women.

**FIRST CAUSE OF ACTION**
**Violation of the Victims of Gender-Motivated Violence Protection Law,**
**N.Y.C. Admin. Code §§ 10-1101, et seq. ("VGMVPL")**
*Against All Defendants*

102.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

103.    Defendants' conduct constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "the term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

104.    The Defendants' conduct constitutes a sexual offense as defined in Article 130 of the New York Penal Law. The Defendant's conduct is also a crime of violence in New York State law and in federal, including but not limited to offences under 18 U.S.C. § 1595 and Penal Code § 230.34.

105.    As a direct and proximate result of the crime of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs and other remedies as this Court may deem appropriate damages, as set forth in  § 10-1104.

106.     Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

107.     This cause of action is also timely because the Defendant's conspiracy to commit these crimes ended in 2024, fewer than two years before the commencement of this action.

108.     This cause of action is also timely commenced because SOS § 483-bb(c)(iii) suspends the statutes of limitations for related claims arising out of the same trafficking situation, where the defendants are estopped from asserting a statute of limitations defense or the victim's psychological trauma justifies tolling under the statute.

### SECOND CAUSE OF ACTION
**Sex Trafficking and Conspiracy to Commit Sex Trafficking
under SOS § 483-bb and NY Penal Code § 230.34**
*Against All Defendants*

109.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

110.     Defendants' acts and omissions, taken separately and/or together constitute a violation of NY Penal Code § 230.34 prohibiting sex trafficking and creating a private right of action under SOS § 483-bb.

111.     Specifically, Tal and Oren Alexander and John Doe perpetrated sex trafficking of Lindsey by requiring her to engage in forced and coerced prostitution acts through the use of drugs, coercion, force, and deception for their own profit from prostitution and in order to advance prostitution.

112.     Hana Boulos perpetrated sex trafficking by deceiving Lindsey to be lured into prostitution acts without her knowledge and against her will for the financial benefit of Hana Boulus and the Alexander defendants.

113. This cause of action is timely because it is commenced within 15 years of the date of the sex trafficking crime and conspiracy to commit it, including the trafficking of Lindsey in 2011 and subsequent acts through 2024 to procure Lindsey's silence and prevent her commencing a timely action, in addition to the disability caused by her trauma directly resulting from Defendants' sex trafficking of Lindsey.

114. Separately and independently, the wider conspiracy to traffic other women, which lasted for decades and likely ended as late as 2024, within one year of commencement of this action.

115. The offense of sex trafficking is also a predicate offence under the N.Y.C. Admin. Code §§ 10-1101, et seq. ("VGMVPL") and timely under that statute because it is commenced within "two years and six months after September 1, 2022."

### THIRD CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
***Against All Defendants***

116. Plaintiff repeats and realleges each and every allegation set forth above with the same effect as if fully set forth herein.

117. Defendants through a pattern of extreme and outrageous conduct, which was beyond all possible bounds of decency, and which may be regarded as atrocious and utterly intolerable within a civilized society, assaulted, battered, molested, harassed, humiliated, degraded and retaliated against Plaintiff.

118. Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society. Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency. Defendants caused Plaintiff to fear for her own safety.

119. The infliction of distress is ongoing. Plaintiff has never ceased being haunted by what Oren and Tal Alexander, along with John Doe did to her, frequently having nightmares and flashbacks. She has never been able to track down Hannah Boulos to confront her about what her role in Lindsey's rape.

120. This action is timely because it was commenced within a year of the Defendant's being arrested and ending their torment of her.

121. Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

122. This cause of action is also timely commenced because SOS § 483-bb(c)(iii) suspends the statutes of limitations for related claims arising out of the same trafficking situation, such as this one, where the defendants are estopped from asserting a statute of limitations defense or the victim's psychological trauma justifies tolling under the statute.

**FOURTH CAUSE OF ACTION**
**False Imprisonment**
*Against Oren Alexander, Tal Alexander, and John Doe*

123. Plaintiff repeats and realleges each and every allegation set forth above with the same effect as if fully set forth herein.

124. Oren Alexander, unlawfully and without legal authority restrained and deprived Plaintiff of her liberty against her will and without her consent.

125. Plaintiff reasonably believed she was not free to leave the place where Oren Alexander restrained her and there was no reasonable means of escape available to Plaintiff.

126. Plaintiff was in fact not free to leave Oren Alexander, and there was in fact no reasonable means of escape available to Plaintiff as Oren Alexander had taken her shoes and cell phone in a dangerous neighborhood at 4am.

127.    The unlawful restraint and deprivation of Plaintiff's liberty imposed by Oren Alexander was intentional and was unreasonable and unwarranted under the circumstances.

128.    Tal Alexander and John Doe, unlawfully and without legal authority restrained and deprived Plaintiff of her liberty against her will and without her consent.

129.    Plaintiff reasonably believed she was not free to leave the place where Tal Alexander and John Doe restrained her and there was no reasonable means of escape available to Plaintiff.

130.    Plaintiff was in fact not free to leave Tal Alexander and John Doe, and there was in fact no reasonable means of escape available to Plaintiff as they had drugged her.

131.    The unlawful restraint and deprivation of Plaintiff's liberty imposed by Oren Alexander was intentional and was unreasonable and unwarranted under the circumstances.

132.    The offense of false imprisonment is also a crime of violence under New York Penal Code and subject to remedies under the N.Y.C. Admin. Code §§ 10-1101, et seq. ("VGMVPL"). It is timely under that statute because it is commenced within "two years and six months after September 1, 2022."

133.    This cause of action is also timely commenced because SOS § 483-bb(c)(iii) suspends the statutes of limitations for related claims arising out of the same trafficking situation, where the defendants are estopped from asserting a statute of limitations defense or the victim's psychological trauma justifies tolling under the statute.

### FIFTH CAUSE OF ACTION
**Dissemination of Intimate Images under NYC Administrative Code § 10-180**
***Against Tal Alexander, Oren Alexander, and John Doe***

134.    Plaintiff repeats and realleges each and every allegation set forth above with the same effect as if fully set forth herein.

135. Defendants procured intimate images of Plaintiff without her consent during her violent sexual assault in Suffolk County and, on information and belief, in New York City.

136. On information and belief these images have been retained and may also have been disseminated to others.

137. They have retained these images for their own sexual gratification, for financial gain, and to ensure Plaintiff's silence.

138. The retention of the intimate images obtained without consent and the threat to disseminate them is ongoing. As such, this action is timely commenced with in the one-year statute of limitations.

139. This cause of action is also timely commenced because SOS § 483-bb(c)(iii) suspends the statutes of limitations for related claims arising out of the same trafficking situation, where the defendants are estopped from asserting a statute of limitations defense or the victim's psychological trauma justifies tolling under the statute.

140. Pursuant to § 10-1103, this cause of action is timely because the threat of dissemination of intimate images is a predicate offense and pursuant to § 10-1105(a) the action was commenced within "two years and six months after September 1, 2022."

## SIXTH CAUSE OF ACTION
### Sex Trafficking and Conspiracy to Commit under 18 U.S. Code § 1591 and § 1595
### *Against Tal Alexander, Oren Alexander, Hana Boulos and John Doe*

141. Plaintiff repeats and realleges each and every allegation set forth above with the same effect as if fully set forth herein.

142. Defendants, in and affecting interstate and foreign commerce, knowingly agreed to combine and conspire to recruit, entice, harbor, transport, provide and patronize Lindsey through

the use of illegal drugs, force, coercion, deception, and fraud, to benefit themselves financially and by receiving something of value in violation of 18 U.S. Code § 1591.

143.    Through the use of deception, drugs, and force, Tal and Oren Alexander, and John Doe caused Lindsey to engage in a commercial sex act.

144.    At all relevant times, Defendants participated in the harboring and transportation of Plaintiff for purposes of sex induced by force, fraud or coercion.

145.    This cause of action if timely because it is commenced within 10 years of the end of the Defendants' sex trafficking conspiracy generally, for which the last overt acts were committed in 2024.

146.    It is also timely because it was commenced within 10 years of the final overt act of the conspiracy as to Defendants' trafficking of Lindsey specifically, including the acts to profit from it, cover it up, and prevent her from reporting it, which ended, if ever, in December 2024.

147.    This cause of action is also timely commenced because SOS § 483-bb(c)(iii) suspends the statutes of limitations for related claims arising out of the same trafficking situation, where the defendants are estopped from asserting a statute of limitations defense or the victim's psychological trauma justifies tolling under the statute.

148.    Pursuant to § 10-1103, this cause of action is timely because federal sex trafficking is a predicate crime of violence and pursuant to § 10-1105(a) the action was commenced within "two years and six months after September 1, 2022."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the City of New York;

B.     An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

C.     An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

D.     An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgement interest;

E.     An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

F.     Prejudgment interest on all amounts due;

G.     An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

H.	An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

I.	Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  June 2, 2025
	New York, New York	**Lili M. Timmermann PA**

	By:	*Lily Timmermann*
		Lilian M. Timmermann
		NY Bar #5444435
		*Admitted pro hac vice*
		*Admission pending*
		68 Jay St,
		Brooklyn, NY 11201
		Telephone: (202)-570-0296
		lili@lmt-legal.com

	By:	/s/ Alexander Heckscher
		Alexander Heckscher
		Law Offices of Alexander
		Heckscher, Esq.
		305 Broadway, 7F, Suite 88
		New York, NY 10007
		(202) 323-6895
		alex@heckscherlaw.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------
          JANE DOE,                        :      INDIVIDUAL VERIFICATION
                                           :
                          Plaintiff,       :
                                           :
               v.                          :
                                           :
          TAL ALEXANDER; OREN              :
          ALEXANDER; HANA BOLOUS aka HANA  :
          BOLOUT;  and JOHN DOE            :
                          Defendants.      :
--------------------------------------------------------X
```

State of New York
County of Kings

I, **JANE DOE** being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action.  I have read the foregoing complaint and know the contents thereof.  The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

Dated: May 27, 2025
      Brooklyn, New York

By: _Lindsey Acree_

Sworn to before me this day of

Notary Public

State of New York
County of _Kings_ SS.
Before me this _27_ day of _May_
20 _25_ came _Lindsey Acree_, the
person described in and who signed the foregoing
document, who swore to the contents thereof.
_____
Notary Public

DIANA FRANCESCHI
NOTARY PUBLIC, State of New York
No. 01FR6283237
Qualified in Kings County
Commission Expires June 3, 20 _25_